UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SASAN GHASEDI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 05-1165 |
| ) | |
| J.R. WALLS, Warden, ) | |
| ) | |
| Respondent. ) | |

## O R D E R

This matter is before the Court on Petitioner, Sasan Ghasedi's ("Ghasedi"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the § 2254 Petition [#1] is DENIED.

### BACKGROUND

Petitioner Sasan Ghasedi is an inmate at the Jacksonville Correctional Center serving a twenty two year sentence of imprisonment as ordered by the Circuit Court of Livingston County, Illinois. Respondent J.R. Walls is the Warden of the Jacksonville Correctional Center. On February 10, 1996, Ghasedi was arrested and charged with one count of possession of a controlled substance with intent to deliver and one count of unlawful possession of a controlled substance.

Ghasedi's imprisonment arises out of an incident at Limestone Rest Area on Route 55 in Livingston County, Illinois on February 10, 1996, at approximately 8:00 p.m. In his petition, Ghasedi admits that the factual findings of the Illinois Appellate Court for the Fourth District are "reliable indcia of the factual determination of the State Court and they should be admissible in this proceeding." The following is a brief recitation of the facts as described by the Appellate Court.

Additional facts that are necessary to the resolution of this matter will be included throughout this Order.

> Illinois State Police officer Michael Mogged testified that, on February 10, 1996, at about 8 p.m., he was on routine patrol and pulled into the Limestone Rest Area (Rest Area) on Interstate 55. As he pulled into the Rest Area, Officer Mogged noticed a single car parked in the truck parking lot. When he entered the truck parking lot, he noticed the car twice moved forward three to four feet, and the brake lights came on. While Officer Mogged observed a person in the car's backseat, he did not see anyone in the front seat, but the driver's door was open. Officer Mogged then pulled behind the vehicle and stopped. At that point, he had not observed a violation of law.
>
> At some point, for officer safety, Officer Mogged called in a "motor assist" call, reporting his location and the observed car's license plate.
>
> As Officer Mogged began to open his door, the front passenger's head popped up, and that person (Payam) exited the front-passenger door and walked hurriedly, wearing only socks, back to Officer Mogged's squad car. Officer Mogged instructed him to slow down and return to the car. Officer Mogged walked with Payam back to the car and asked Payam if he was having vehicle problems. Payam said no.
>
> As the pair conversed about what was going on with the vehicle, Officer Mogged noticed Payam's eyes were bloodshot and glassy, and Payam appeared "quite nervous" for the situation. Officer Mogged also observed that the backseat passenger, Nicholas Spitzer, was looking straight ahead and his eyes appeared to be "very, very glassy." Spitzer's eyes did not move.
>
> At some point, Officer Mogged asked Payam for identification. Payam handed the officer a credit card, and Officer Mogged then asked Payam to get into his squad car. When Payam retrieved the credit card from his pocket, Officer Mogged observed a package of zigzag rolling papers come out of Payam's pocket.
>
> When they were in the squad car, Officer Mogged then informed Payam he had given the officer a credit card. Payam then produced his driver's license, which was a facially valid Missouri license. Two to three minutes passed before Officer Mogged received a response on the license check, which indicated Payam had no warrants. While he was waiting on the warrant check, Officer Mogged discussed the rolling papers with Payam, who stated he smoked cannabis. Officer Mogged observed defendant exiting the building. When defendant got back to the car, Officer Mogged asked him to come back to the squad car. At the previous suppression hearings, Officer Mogged had testified that defendant approached the squad car after exiting the rest room facility.

>Officer Mogged asked defendant for his identification, and defendant presented a facially valid Oregon driver's license. Defendant appeared very calm and returned to his vehicle. Officer Mogged then ran a warrant check on defendant's license, and defendant's license was also "clean." Officer Mogged ran the check because (1) officer safety and (2) to find out who was all involved with the vehicle. After the check on defendant's license was complete, Officer Mogged gave Payam both his and defendant's license and asked whether they had any illegal drugs or alcohol in the vehicle. Payam replied no. Officer Mogged then asked Payam for consent to search the car. The officer had already learned that Payam had rented the car. Officer Mogged believed 10 to 15 minutes had elapsed between the time he first saw the car and when he asked for consent to search.
>
>According to Officer Mogged, Payam granted consent to search the vehicle. Officer Mogged then did a pat-down search of Payam. Thereafter, he asked defendant and Spitzer one at a time to exit the vehicle and performed a pat-down search on each of them.
>
>* * *
>
>After obtaining consent to search, Officer Mogged observed a dried, green leafy substance on the backseat. He then looked into a duffel bag sitting on the backseat and saw more of the green leafy substance. He then placed defendant, Payam, and Spitzer under arrest for possession of cannabis and continued his search. Officer Mogged lifted up the left side of the backseat and discovered a brown paper bag containing several clear plastic bags with a white substance. He then lifted up the right side of the backseat and discovered a white plastic bag or a brown paper bag. Inside the bag was a clear plastic Baggie, containing a white powdery substance.
>
>Officer Mogged conducted field tests on the green leafy substance and the white powdery substance. The green leafy substance tested positive for cannabis, and the white powdery substance tested positive for cocaine.

(Order of the Illinois Appellate Court, No. 4-03-0157, Jan. 15, 2004, at 4–8.)

Ghasedi was then arrested and charged with one count of possession of a controlled substance with intent to deliver and one court of unlawful possession of a controlled substance.

On May 20, 1996, petitioner filed a motion to quash arrest and suppress evidence arguing that the investigatory stop was not a valid *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1 (1968). A hearing was held on September 5, 1996 and the motion to suppress was denied. On November 13,

1997, a jury convicted Ghasedi of one count each of possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance. Ghasedi was sentenced to 22 years imprisonment and ordered to pay a $2,000 mandatory assessment and a $275,000 street-value fine.

Ghasedi appealed the conviction arguing that (1) the trial court erred in refusing to grant him a new trial based on the jury's exposure to a "most wanted poster;" (2) the trial court improperly relied on extrajudicial knowledge of a witness of the State; and (3) police unlawfully seized money discovered in a pat-down search of Ghasedi. On May 22, 2000, the Illinois Appellate Court reversed the trial court's denial of the motion for a new trial, vacated the denial of the motion to suppress evidence, and remanded for a new hearing on Ghasedi's motion to suppress.

On remand, the trial court held a second suppression hearing and subsequently denied the motion to suppress finding that Ghasedi did not have standing to contest the vehicle search because he was not the one who rented the car. A jury once again convicted Ghasedi and he was sentenced to 22 years imprisonment and ordered to pay a $2,000 mandatory assessment, a $275,000 street-value fine, and a $50 lab fee.

Ghasedi appealed arguing that (1) the trial court erred when it denied his motion to suppress on the basis that he did not have standing; (2) reversible error occurred when expert testimony was admitted without a proper foundation; (3) the overall evidence was insufficient to support a conviction; and (4) the trial court abused its discretion when it sentenced him to 22 years in prison. On July 12, 2002, the Illinois Appellate Court vacated the trial court's ruling on Ghasedi's motion to suppress finding that the trial court erred in determining that defendant did not have standing to challenge the search. The court also vacated Ghasedi's conviction and sentence and remanded the case to the trial court.

The trial court held a third suppression hearing on November 27, 2002, and once again denied Ghasedi's motion to suppress. The trial court then reinstated Ghasedi's conviction and sentence from the previous trial. Ghasedi filed another appeal arguing that the trial court erred in denying his motion to suppress because (1) Officer Mogged unreasonably seized Ghasedi by requesting his co-defendant, Payam, to sit in his squad car while the officer ran a warrant check on Payam's license even though Officer Mogged did not have a reasonable articulable suspicion of criminal activity. Ghasedi also argued that the (1) reversible error occurred at trial when the court admitted the testimony of the State's chemical and fingerprint experts, (2) the State's evidence was insufficient to support Ghasedi's conviction, and (3) the trial court abused its discretion in sentencing Ghasedi to 22 years imprisonment.

On January 15, 2004, the Illinois Appellate Court affirmed the trial court's judgment. Ghasedi filed a Petition for Leave to Appeal to the Illinois Supreme Court arguing that he was unconstitutionally detained when (1) the police officer ran a check on Payam's license without a reasonable, articulable suspicion; and (2) the police officer ran a check on Ghasedi's license without reasonable articulable suspicion of criminal activity. The Illinois Supreme Court denied the Petition on May 26, 2004.

On May 26, 2005, Ghasedi filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 arguing that the trial court's refusal to grant his motion to suppress was an unreasonable application of the facts of his case.

## DISCUSSION

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state

remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991), *quoting Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988). If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition. *Id.* In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. *Bocian v. Godinez*, 101 F.3d 465, 468-69 (7th Cir. 1996). In the instant case, Ghasedi fully exhausted his Fourth Amendment claim in the state courts.

Under 28 U.S.C. § 2254(d), a petition must be denied with respect to any claim previously adjudicated on the merits in a state court unless the decision of the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Lindh v. Murphy*, 96 F.3d 856, 868–71 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Subsection (d)(1) instructs that Supreme Court precedent governs legal questions. *Id.* at 869. In resolving mixed questions of law and fact, relief is unavailable unless "the state's decision reflects an unreasonable application of the law," meaning federal courts are to have a hands-off attitude unless the state court judgment is premised on an unreasonable error. *Id.* at 870 (internal quotation marks omitted). A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Id.* at 871, 876–77. Subsection (d)(2) pertains to a decision constituting an unreasonable determination of the facts, and, according to 28 U.S.C. § 2254(e)(1),

factual issues are presumed to be correctly resolved. A petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In this case, Ghasedi is arguing that he is entitled to relief pursuant to 28 U.S.C. § 2254(d)(2) alleging that the trial court's decision on his motion to suppress was an unreasonable determination of the facts of the case.

Specifically, the basis for Ghasedi's motion to suppress was that the evidence seized from him was the product of an unreasonable search and seizure in violation of his rights as guaranteed by the Fourth Amendment. The Supreme Court has limited the availability of federal habeas relief to petitioners asserting claims based on the Fourth Amendment. *See Stone v. Powell,* 428 U.S. 465 (1976). The Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 482. A three part test has been developed to determine if a petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim. *Hampton v. Wyant,* 296 F.3d 560, 563 (7th Cir. 2002). A petitioner must have clearly informed the state court of his Fourth Amendment claim and the facts giving rise to it. *Id.* The state court must have carefully and thoroughly analyzed the facts and the state court must have applied the appropriate Constitutional and state law. *Id.* Moreover, the Seventh Circuit noted that habeas relief is not warranted when a state court's analysis of the facts on a Fourth Amendment claim was in error. *Id.* Rather, it takes an egregious error indicating that the state court did not take seriously their obligation to decide the Fourth Amendment claim to warrant relief under *Stone. Id.* (finding that "[i]t takes an 'egregious error' to imply that the state judges have closed their ears and minds to argument - and it is the [egregious error] and not the error itself, that would justify relief under *Stone*.").

Ghasedi clearly informed the state court of his Fourth Amendment claim. And although Ghasedi claims at the outset of his argument that the state court did not apply the appropriate body of law, he does not articulate why the law that the state court relied on is inappropriate. A review of the transcript of the third suppression hearing indicates that the trial court relied upon the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), which is the appropriate legal standard as established by the Supreme Court. Therefore, the state court provided Ghasedi with a full and fair opportunity to litigate his Fourth Amendment claim so long as the state court carefully and thoroughly analyzed the facts of the case.

A review of the transcript from the third suppression hearing indicates that the state court did conduct a careful and thorough analysis of the facts. Ghasedi argues that the state court's analysis was not thorough because both the state trial court and the state appellate court neglected to take into account multiple discrepancies between Officer Mogged's original testimony at the first suppression hearing, which occurred six and a half months after Ghasedi's arrest, and the third suppression hearing which occurred approximately six and a half years after the arrest. Ghasedi argues that the state courts erred because they credited Officer Mogged's testimony at the third suppression hearing more than they credited his testimony from the first suppression hearing. Additionally, Ghasedi argues that the testimony of the first hearing should have been more fully credited because it occurred closer in time to the arrest.

However, a review of the transcript of the third suppression hearing indicates that the trial court judge read and took judicial notice of the testimony presented in the first two suppression hearings and that defense counsel was allowed to ask any questions and present any evidence that he wished at the third hearing. Moreover, defense counsel conducted an extensive cross

examination of Officer Mogged and had a full opportunity to impeach his credibility by highlighting the inconsistencies in his testimony. As the factfinder, it was the trial judge's responsibility to determine whether or not he credited Officer Mogged's testimony despite the existence of the inconsistencies. In doing so, the trial judge found Officer Mogged to be credible and found that the limited seizure of Ghasedi did not violate the standard as established by *Terry v. Ohio*. Accordingly, as the record indicates that the trial judge was familiar with all of the testimony in this case and defense counsel had the opportunity to highlight inconsistencies in the record, the Court finds that the trial court carefully and thoroughly analyzed the facts of the case and applied them to the appropriate legal standard. As Ghasedi was given a full and fair opportunity to litigate his search and seizure claim, he is not entitled to habeas relief.

## CONCLUSION

For the reasons set forth herein, Ghasedi's petition for writ of habeas corpus pursuant to § 2254 is DENIED. This matter is now terminated.

ENTERED this 30th day of January, 2006.

                                                  s/ Michael M. Mihm
                                                  Michael M. Mihm
                                              United States District Judge